UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CALVIN BURKE,
   Plaintiff,

vs.                                No. 05-1059

ILLINOIS DEPARTMENT OF CORRECTIONS, et.al.,
   Defendants.

### ORDER

Plaintiff alleges that Defendants were deliberately indifferent to his periodontal disease during his incarceration at Illinois River Correctional Center. Before the Court are Defendants' unopposed motions for summary judgment (d/e's 40, 43). The undisputed facts show that the defendants were not deliberately indifferent. Accordingly, the motions will be granted and this case terminated.

### Summary Judgment Standard

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

### Undisputed Facts

Plaintiff has not responded to the summary judgment motions. The plaintiff was warned that "[u]nder the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed." (d/e's 42, 44). The same notices warned the plaintiff that, "If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment." *Id.*

The court has reviewed the proposed undisputed facts submitted by Defendants Wexford

Health Sources, Dr. Osafo, and Dr. Awada (d/e 43, p. 3-15) and finds them well supported by their cites to the record. Those facts show beyond dispute that Dr. Awada, the dentist responsible for treating the plaintiff's teeth, was not deliberately indifferent to the plaintiff's tooth problems. Accordingly, the plaintiff suffered no Eighth Amendment violation.[1] The court adopts, essentially verbatim and with their cites, the undisputed facts proposed by Defendants Wexford Health Sources, Dr. Osafo, and Dr. Awada (d/e 43, p. 3-15). These facts dispose of the case; it is not necessary to set forth Defendant Bohler's facts.

1  Dr. Osafo is currently the Medical Director at the Illinois River Correctional Center in Canton, Illinois. (See Exhibit 1.)

2. Dr. Osafo was the Medical Director at the Illinois River Correctional Center during the relevant time frames from November 2004 through Plaintiff's transfer to East Moline Correctional Center in September of 2005. (See Exhibit 1.)

3. In his role as the Medical Director at the Illinois River Correctional Center, Dr. Osafo has personally examined Calvin Burke, B-60083, for various complaints. (See Exhibit 1.)

4. In Dr. Osafo's opinion, the Plaintiff was appropriately referred to the dentist for complaints relating to his teeth and/or gums. (See Exhibits 1 and 1A.)

5. Dr. Osafo personally saw Mr. Burke on December 9, 2004 for right ear pain, which was noted in conjunction with a dental examination. Pursuant to his examination, Mr. Burke's ear showed no obvious abnormality. In Dr. Osafo's opinion, Mr. Burke's ear examination was normal. Dr. Osafo therefore referred Mr. Burke back to the dentist for another evaluation. (See Exhibits 1 and 1B.)

6. With respect to any complaints concerning Mr. Burke's gums and/or dental work, the Plaintiff would be referred to the onsite dentist, who was Dr. Awada during the time frame in question. (See Exhibits 1 and 1A through 1E.)

7. According to Dr. Osafo's recollection and review of the Plaintiff's medical records, Dr. Awada treated each and every complaint made by Mr. Burke that was presented to him. (See Exhibit 1.)

8. At no time did Dr. Awada recommend that Calvin Burke receive care offsite relating to his dental care. (See Exhibits 1and 2.)

---

[1]Additionally, the defendants other than Dr. Awada were justified in relying on Dr. Awada's professional judgment and treatment decisions. *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005).

9. Dr. Osafo relied upon Dr. Awada's care and treatment of this patient as Dr. Awada is more qualified than Dr. Osafo with respect to dental issues and making such determinations. (See Exhibits 1 and 2.)

10. On each and every occasion that Dr. Osafo evaluated Calvin Burke, he was properly assessed and treated for any medical problems he presented at the time. In Dr. Osafo's medical opinion, Mr. Burke did not require further treatment for the conditions presented while he was an inmate at the Illinois River Correctional Center. (See Exhibit 1.)

11. Based upon Dr. Osafo's personal experience and review of Calvin Burke's medical records, there are no conditions noted which presented a substantial risk of harm to Mr. Burke. (See Exhibits 1 and 2A through 2I.)

12. Dr. Osafo agreed with the evaluation of Dr. Awada regarding his recommendation that tooth #31 be extracted. (See Exhibit 1.)

13. Dr. Osafo has no medical reason to disagree with Dr. Awada's assessment that Plaintiff's swelling of his gums, irritation, drainage, and pus were related to an abscess at that particular tooth. (See Exhibit 1.)

14. In reviewing Plaintiff's medical records, it appears that Mr. Burke's symptoms relating to drainage and swelling were alleviated with care and treatment provided by Dr. Awada in the form of antibiotics, pain relievers, and regular monitoring. (See Exhibits 1 and 2A through 2I.)

16. In Dr. Osafo's medical opinion and judgment, periodontitis did not constitute a serious medical need for Mr. Burke while he was an inmate at the Illinois River Correctional Center. (See Exhibit 1.)

17. As of the time he was transferred to the East Moline Correctional Center, Mr. Burke suffered from no pus and no drainage. (See Exhibits 1 and 2F and 2G.)

18. At no time did Dr. Osafo provide any direct care to Mr. Burke regarding his gums or his teeth. (See Exhibits 1 and 1A through 1H.)

20. Dr. Osafo relied upon Exhibits 1A through 1H and Exhibits 2A through 2I to the extent necessary and referenced in providing his care and treatment to Mr. Burke and in formulating his opinions contained herein. (See Exhibit 1.)

21. Dr. Awada is a licensed dentist practicing in the state of Illinois. (See Exhibit 2.)

22. In Dr. Awada's capacity as a dentist, he has treated various inmates at the Illinois River Correctional Center, including Calvin Burke, the Plaintiff in this case. (See Exhibit 2.)

25. Calvin Burke suffers from periodontal disease. (See Exhibits 2 and 2A.)

26. Periodontal disease results from a buildup of bacteria in the mouth which allows plaque to build up along and under the gum line in most cases. (See Exhibit 2.)

27. The main goal in treating periodontal disease is to control the infection. (See Exhibit 2.)

28. Plaintiff, Calvin Burke, was seen by Dr. Awada on November 11, 2004. On that date, he complained of throbbing pain with reference to tooth #31 which was radiating to his ear. On examination, there was no apparent decay. Two periapical films were taken which showed no cavities. Mr. Burke had receding gums at teeth #30 and #31. At that time, Dr. Awada recommended proper oral hygiene procedures, as well as a saline rinse and Motrin for the Plaintiff's pain. Dr Awada referred Mr. Burke to Dr. Osafo, the Medical Director, for his complaints concerning his ear to rule out any possible other causes for the ear pain. (See Exhibits 1 and 2, and Exhibits 1B and 2D.)

29. Dr. Awada next saw Mr. Burke on December 10, 2004 on referral from Dr. Osafo. At that time, Mr. Burke was still complaining about on and off pain at his ear that started from tooth #31. On evaluation, no decay was noted, just the receding of the gums. Again, periapical X-rays were taken and no cavities were noticed. Mr. Burke was diagnosed with slight periodontic disease at that time. Dr. Awada recommended tubes of Orajel and advised him to return as needed. (See Exhibits 2 and 2D.)

30. Dr. Awada again saw Mr. Burke on December 13, 2004. At that time, Mr. Burke was complaining of a toothache at tooth #31. Upon examination, Dr. Awada noted swelling at tooth #31 and mobility of positive two. Dr. Awada noted that Mr. Burke suffered from moderate periodontitis in relation to tooth #31. Dr. Awada recommended oral hygiene techniques, which included proper brushing and flossing. He also prescribed Pen VK (an antibiotic) for seven days, as well as Motrin, to address Plaintiff's complaints of pain. (See Exhibits 2 and 2D.)

31. On December 28, 2004, Dr. Awada again saw Plaintiff, Calvin Burke. At that time, he complained of the same problems at tooth #31, as well as pus and drainage. Dr. Awada recommended extraction of the tooth on this date; however, Mr. Burke indicated that he wanted to wait for extraction. Dr. Awada therefore prescribed additional antibiotics, as well as Motrin, to
address Mr. Burke's symptoms. (See Exhibits 2 and 2D.)

32.  Mr. Burke was seen on December 29, 2004 for a cleaning of his teeth. He was advised of proper oral hygiene instruction on that date by the dental hygienist as well. (See Exhibits 2 and 2D.)

33. On January 21, 2005, Dr. Awada again saw Mr. Burke, who was complaining of pain

at tooth #31. On examination, Dr. Awada noted that Mr. Burke suffered from a buccal abscess at tooth #31 with pus and drainage. His assessment at that time was perio abscess due to periodontal disease. His recommendation for treatment was Tetracycline, an antibiotic. Dr. Awada also advised Mr. Burke of the proper oral hygiene techniques. Mr. Burke was also advised that his only treatment option was extraction of tooth #31 if the matter persisted. (See Exhibits 2 and 2D.)

34. Mr. Burke was next seen on February 7, 2005. At that time, Mr. Burke complained of swelling off and on at tooth #31, with pus and blood discharge. On examination, Dr. Awada noted a buccal fistula present, but no pus and no bleeding. He diagnosed Mr. Burke's condition as a perio pocket. On that date, Dr. Awada scaled the area of tooth #31. Mr. Burke was advised that his option for treatment was extraction. Mr. Burke indicated to Dr. Awada that he wanted to wait and did not agree to the extraction at that time. (See Exhibits 2 and 2E.)

35. On March 15, 2005, Mr. Burke complained of the same problems. Dr. Awada noted buccal swelling midway on the buccal fold. Again, he diagnosed Mr. Burke with periodontitis. He told Mr. Burke that his tooth needed to be removed. Mr. Burke refused to have tooth #31 removed and also refused to sign the refusal form. (See Exhibit 2.)

36. In Dr. Awada's opinion, the signs and symptoms of swelling, bleeding, and discharge complained of by Mr. Burke from November of 2004 through March 15, 2005 were all attributable to the area of abscess at tooth #31. Dr. Awada recommended another course of Tetracycline and a prescription for Motrin to address the Plaintiff's complaints on this date. (See Exhibits 2 and 2F.)

37. Based upon the medical literature, 75 to 80 percent of all Americans have some form of periodontal disease. (See Exhibit 2.)

38. A study conducted at the Illinois River Correctional Center regarding the incidence of periodontal disease indicates the same results are true at that facility. (See Exhibit 2.)

39. There are various stages and forms of periodontal disease. (See Exhibit 2.)

40. In general, periodontal disease does not constitute a serious medical need. (See Exhibit 2.)

41. Specifically, Mr. Burke's periodontal disease does not constitute a substantial risk of harm to him so long as he follows the recommendations given to him by his dentist concerning proper oral hygiene, as well as the recommendations regarding specific care concerning any problem teeth. (See Exhibit 2.)

42. During the relevant time frame, Mr. Burke's complaints and symptomatology were all related to tooth #31. (See Exhibits 2 and 2A through 2I.)

43. Dr. Awada recommended to Mr. Burke that he have tooth #31 removed on December 28, 2004 when it was clear to him that Mr. Burke's symptomatology was clearly related to this particular tooth. (See Exhibit 2.)

44. In Dr. Awada's medical opinion, other forms of treatment, which may have included surgery, would not have been successful in saving tooth #31. (See Exhibit 2.)

45. Calvin Burke did not follow the recommended course of treatment. Mr. Burke's failure to follow Dr. Awada's recommendations increased the length of time and number of recurrences of infections at tooth #31. (See Exhibit 2.)

46. In Dr. Awada's opinion, no form of alternative treatment would have saved tooth #31. (See Exhibit 2.)

47. Periodontal disease is a long-term progressive one that forms over years. (See Exhibit 2.)

48. A patient may slow or stop the progression of periodontal disease with proper oral hygiene. As a dentist who sees numerous inmate patients, Dr. Awada suspected that Mr. Burke may not be the most compliant of patients in the years to follow. It was his recommendation to Mr. Burke that he see a periodontist for possible "surgical intervention to treat his overall periodontal disease."  At no time did Dr. Awada recommend that Mr. Burke have surgery to treat the symptoms with which he presented to Dr. Awada while an inmate at the Illinois River Correctional Center. (See Exhibits 1 and 2).

49. Dr. Awada again saw Mr. Burke on May 11, 2005. At that time, he was continuing to complain of the same problems, including a toothache at tooth #31. He reported swelling with pressure and off and on pain. However, on examination, Dr. Awada noted no swelling was present.  He diagnosed Mr. Burke once again with chronic periodontitis with respect to tooth #31. He noted that both the patient and Dr. Awada would keep watching the area. He did not recommend any  additional mediations as there was no swelling present on that date. (See Exhibits 2 and 2F.)

50. Dr. Awada saw Mr. Burke again on May 23, 2005. Again, Mr. Burke was complaining of swelling at tooth #31 by the gum line. Dr. Awada noted swelling on that date by the gum line, as well as pus and drainage. He diagnosed Mr. Burke's condition as a chronic perio abscess. He prescribed Tetracycline and Motrin for the pain. He further documented that they would wait to see when the patient would have his tooth removed as this was the only recommended method to alleviate the signs and symptoms and chronic condition of which the Plaintiff complained. Mr. Burke continued to refuse the extraction. (See Exhibits 2 and 2F.)

51. At that time, it was Dr. Awada's opinion that Mr. Burke's chronic condition was

selfcontained. His body was containing the problem. There was no systemic condition and Plaintiff was not suffering from any sort of blood-borne infection. (See Exhibits 2 and 2F.)

52. At all times, Mr. Burke was making his condition worse by refusing the extraction of tooth #31. (See Exhibit 2.)

53. On June 9, 2005, Mr. Burke was seen once more for the abscess at tooth #31. On examination, Dr. Awada noted no swelling present. The area was not red. He diagnosed Mr. Burke's condition as acute periodontitis in the process of healing. He recommended proper oral hygiene techniques once again. Dr. Awada also indicated to Mr. Burke that they would continue to monitor his condition. Mr. Burke was not willing to have the tooth removed. (See Exhibits 2 and 2F.)

54. Mr. Burke was seen again on June 20, 2005. At that time, he was continuing to complain of the same problems at tooth #31. On examination, Dr. Awada noted buccal swelling along the gum line. There was no pus or drainage. Mr. Burke was diagnosed with periodontitis at that area. Dr. Awada performed a curettage of the buccal pocket. This included a scaling of the hard tissues, as well as a cleaning of the soft tissues at that area. He once again prescribed antibiotics and Motrin, as well as salt rinses to help remove food debris around the pocket. Mr. Burke continued to refuse the recommendation to remove this tooth. (See Exhibits 2 and 2G.)

55. On July 16, 2005, Mr. Burke was seen by Dr. Awada again and was complaining about pain in his right ear. On examination, he noted no swelling and no cavities. He did note a positive percussion at tooth #31. (This is a positive response for pain with tapping in a particular area.) Dr. Awada noted no pus or drainage on that date. Periapical X-rays were taken which revealed a periapical cyst at tooth #31. He obtained occlusal films. (See Exhibits 2 and 2H.)

56. Dr. Awada diagnosed Mr. Burke with periapical infection and treated it with antibiotics and Motrin. Mr. Burke was counseled regarding excessive consumption of antibiotics and the possible building up of resistance to those antibiotics. Mr. Burke was advised that X-rays were ordered with respect to his mandibular pain to rule out any jaw problems. (See Exhibits 2 and 2H.)

57. The X-rays of Mr. Burke's jaw were taken on July 14, 2005, and showed that the mandible appeared to be unremarkable. (See Exhibits 2 and 2I.)

58. Dr. Awada's recommendation for treatment for Plaintiff's chronic complaints was extraction of tooth #31. Plaintiff refused this form of treatment while under Dr. Awada's care. (See Exhibit 2.)

59. Upon review of Plaintiff's chart through October of 2005, it is Dr. Awada's understanding that Mr. Burke has had tooth #31 extracted. (See Exhibit 2.)

60. Apart from the area of tooth #31, Mr. Burke's periodontal disease can routinely be monitored and conservatively treated by the onsite dentists and dental hygienists through routine cleaning and scaling. (See Exhibit 2.)

61. While Mr. Burke may benefit from additional types of surgery of which Dr. Awada made him aware, none of the surgical procedures were medically necessary at the time he was seen by Dr. Awada. (See Exhibit 2.)

62. In Dr. Awada's opinion, the care and treatment provided to Mr. Burke was appropriate. (See Exhibit 2.)

63. At the time Mr. Burke was seen by Dr. Awada, there were two options for treating his periodontal disease. (See Exhibit 2.)

64. One option involved surgery and the other involved removal of Plaintiff's tooth #31. (See Exhibit 2.)

65. In Dr. Awada's medical opinion, surgical techniques available to treat Plaintiff's periodontal condition at the area of tooth #31 would not have saved his tooth. (See Exhibit 2.)

66. Dr. Awada therefore recommended that the tooth be removed in order to alleviate any further risk of harm associated with the recurring abscesses and chronic symptoms at or near that particular tooth. (See Exhibit 2.)

67. Any health risks Plaintiff's periodontal disease presented to Mr. Burke during the time Dr. Awada cared for him were associated with the area at or near tooth #31. In Dr. Awada's medical opinion, the removal of tooth #31 would significantly alleviate the risks of serious harm to the Plaintiff resulting from Plaintiff's periodontal disease present at that area. (See Exhibit 2.)

68. Despite this, the prescriptions of antibiotics and pain medication were successful in alleviating Plaintiff's symptoms of swelling, pus, and drainage as of June 2005. (See Exhibit 2.)

69. Plaintiff's periodontal disease presented an issue of potential chronic infection that could only be resolved by extraction of the tooth. (See Exhibit 2.)

70. Plaintiff's report that he has not had any ongoing chronic abscesses and swelling since the removal of tooth #31 is further support for Dr. Awada's opinion that this tooth was a source of particular problem to Mr. Burke. (See Exhibit 2.)

71. At no time would Dr. Awada have expected Dr. Osafo to recommend a course of treatment relating to dental issues which would be outside of his area of expertise. (See Exhibit 2.)

72. In Dr. Awada's medical opinion, routine care and treatment of the Plaintiff's gums and teeth comes within the purview of a dentist and dental hygienist. (See Exhibit 2.)

73. The onsite facilities at the correctional centers, including Illinois River Correctional Center, are qualified to treat Mr. Burke and provide him with proper oral hygiene techniques and cleanings. (See Exhibit 2.)

74. Dr. Awada recommended that Mr. Burke see a periodontist for possible surgery as a courtesy and recommendation to him for possible elective treatment once he was released from the Department of Corrections. Such recommendations were given to Mr. Burke as medical advice regarding future care. (See Exhibit 2.)

75. Plaintiff's refusal to have tooth #31 extracted when initially recommended in December of 2004 exacerbated the symptoms with which he presented to Dr. Awada on the subsequent dates. (See Exhibit 2.)

76. Dr. Awada recommended that Plaintiff consider surgery as an option for Plaintiff's periodontal disease when he is released from the correctional facility. (See Exhibit 2.)

77. Plaintiff was incarcerated at Illinois River Correctional Center from July of 2004 through September of 2005. (Plaintiff's Deposition, p. 6.)

79. At the time of his deposition, Plaintiff suffered from no current gum bleeding, no swelling, and no abscesses. (Plaintiff's Deposition, p. 14.)

80. The Plaintiff's symptoms of gum bleeding, swelling, and abscesses subsided in July of 2005. (Plaintiff's Deposition, p. 14.)

81. Plaintiff admits that the symptoms which brought him to see Dr. Awada were focused on tooth #31. (Plaintiff's Deposition, p. 39.)

82. Plaintiff was given seven-day prescriptions of antibiotics and pain relievers to relieve his symptoms. (Plaintiff's Deposition, p. 15.)

83. Dr. Awada discussed potential options with the Plaintiff which included seeing a periodontist for possible surgical procedures once he is released from the custody of the Illinois Department of Corrections. Dr. Awada did not recommend that Plaintiff be seen while an inmate at Illinois River Correctional Center. (Plaintiff's Deposition, p. 23.)

85. The symptoms at issue in this case began in November of 2004 and consisted of swelling and irritation associated with tooth #31. (Plaintiff's Deposition, p. 25.)

86. Dr. Awada recommended that tooth #31 be extracted in December 2004. (See Affidavit of Dr. Awada, attached hereto as Exhibit 2, as well as Plaintiff's medical records attached thereto.)

87. Plaintiff refused to have tooth #31 extracted. (See refusal attached to Plaintiff's Deposition as Exhibit 1.)

89. Plaintiff refused the extraction because he believed that surgery was recommended to save that particular tooth. (Plaintiff's Deposition, p. 29.)

91. In June of 2005, the Plaintiff's symptoms relating to swelling and abscesses began to go away. (Plaintiff's Deposition, p. 36.)

92. Plaintiff no longer has tooth #31 as it was removed in October of 2005 at the East Moline Correctional Center. (Plaintiff's Deposition, p. 37.)

93. Plaintiff's signs and symptoms relating to pus and drainage stopped in July of 2005. (Plaintiff's Deposition, p. 39.)

94. No dentist or physician has recommended that Plaintiff be seen by an outside physician for any of his complaints. (Plaintiff's Deposition, p. 40.)

99. Plaintiff has not had any oral health problems since tooth #31 was removed. (Plaintiff's Deposition, p. 46.)

**Analysis**

The court assumes for purposes of this order that the plaintiff had a serious medical need within the meaning of the Eighth Amendment. *Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999)("A condition is objectively serious if 'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'")(quoted cite omitted).  The question is whether Dr. Awada was deliberately indifferent to that need.

To show deliberate indifference, the plaintiff must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001), *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000).  Deliberate indifference may be inferred "when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Pardue*, 94 F.3d 254, 261-62 (7th Cir. 1996); *see also Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)(deliberate indifference may be established if "response so inadequate that it demonstrated an absence of professional judgment,

that is, that nominally competent professional would not have so responded under the circumstances."). Malpractice or disagreement with a doctor's treatment decisions is not deliberate indifference. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

The plaintiff's apparent belief that he should have received surgery for his periodontal disease is layman's speculation. There is no competent evidence to dispute Dr. Awada's professional opinion that surgery would not have saved the plaintiff's tooth. Dr. Awada treated the plaintiff's pain, took x-rays, prescribed antibiotics and recommended extraction. No evidence suggests that the recommendation for extraction was outside accepted norms of professional judgment. In short, no inference arises that Dr. Awada was negligent, much less deliberately indifferent. Therefore, the plaintiff's Eighth Amendment rights were not violated. Summary judgment will be entered in favor of all the defendants.

IT IS THEREFORE ORDERED:

1) Defendants' motions for summary judgment are granted [d/e's 40, 43]. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot and this case is closed. The clerk is directed to vacate the final pretrial and trial dates.

2) If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

ENTER this ___2nd___ day of October, 2006.

                                                               **s\Harold A. Baker**

                                                      HAROLD A. BAKER
                                  UNITED STATES DISTRICT JUDGE